UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ANDREW FLOOD,                          )
                                       )
            Plaintiff                  )
                                       )
      v.                               )      1:24-cv-00239-SDN
                                       )
CHARLES BALL, et al.,                  )
                                       )
            Defendants                 )

**RECOMMENDED DECISION ON MOTION FOR LEAVE TO AMEND
COMPLAINT AND ORDER ON MOTION TO STRIKE**

After Plaintiff filed an amended complaint, Defendant moved to strike the amended complaint and Plaintiff then filed a motion for leave to file the amended complaint. (Amended Complaint, ECF No. 45; Motion to Strike, ECF No. 47; Motion to Amend, ECF No. 49.) Following a review of the record and after consideration of the parties' arguments, I recommend that the Court grant in part Plaintiff's motion for leave to file the amended complaint. I deny Defendants' motion to strike.

**BACKGROUND**

On July 1, 2024, while in custody at the Maine State Prison, Plaintiff, proceeding pro se, commenced this action against a police officer (Charles Ball), the City of Calais Police Department and its Chief of Police, and the Baileyville Police Department. (Complaint, ECF No. 1.) Plaintiff twice amended the complaint to provide additional factual assertions. (First and Second Amended Complaints, ECF Nos. 5 & 9.) In his second amended complaint, Plaintiff described an encounter with Defendant Ball in March 2019, when Plaintiff was allegedly handcuffed tightly with his hands behind his back for

more than nine hours, resulting in injuries to his wrists, arms, shoulders, and back, during which time he was threatened, and denied water and access to a bathroom.  He also referenced a subsequent encounter with Defendant Ball in 2024, but he provided few details regarding that encounter.

After preliminary review in accordance with 28 U.S.C. §§ 1915 and 1915A, I recommended that the Court (i) dismiss the Baileyville Police Department as a defendant, (ii) conclude that Plaintiff had not alleged facts sufficient to support a claim under the Americans with Disabilities Act (ADA), and (iii) permit Plaintiff to proceed on his excessive force claim against Defendant Ball and the City of Calais related to the circumstances of Plaintiff's arrest in March 2019.  (Recommended Decision, ECF No. 24.) In the absence of an objection, the Court adopted that recommended decision on April 17, 2025.  (Order, ECF No. 25.)

After Defendants answered the second amended complaint (Answer, ECF No. 33), the Chief of Police and the City of Calais Police Department moved to dismiss the claims against them (Motion for Partial Dismissal, ECF No. 34).  Plaintiff then moved for leave to file a third amended complaint.  (Motion to Amend, ECF No. 40).

On September 24, 2025, the Court dismissed the Chief of Police and the City of Calais Police Department as defendants, and denied Plaintiff leave to file the third amended complaint on the grounds that the factual allegations in the proposed amendment were insufficient to support a plausible claim.  (Order, ECF No. 43.)  Thereafter, the Court issued a scheduling order establishing December 10, 2025, as the deadline for any further amendment of the pleadings.  (Scheduling Order, ECF No. 44.)

On December 18, 2025, Plaintiff filed the latest amended complaint and a motion to extend the deadline to amend the pleadings. (Motion to Extend Time, ECF No. 46.) The Court granted the motion, extending the deadline to December 31, 2025, the date Plaintiff moved for leave to amend the complaint. (Order, ECF No. 52.)

In the proposed amended complaint, Plaintiff names only Officer Ball as a defendant, alleges facts relating to two separate encounters with Defendant Ball—the March 2019 incident and an incident in May 2023—and asserts five claims under 42 U.S.C. § 1983: (I) excessive force; (II) false arrest, false reporting, and fabrication; (III) illegal search, strip search, and photographing; (IV) unlawful blood draw; and (V) failure to intervene.

## LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure governs pretrial amendments of the pleadings and "sets forth a standard under which courts should 'freely give leave'" to amend "'when justice so requires.'" *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 213 (2025) (quoting Fed. R. Civ. P. 15(a)(2)). The purpose of the Rule is to "'provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.'" *Id.* (quoting 6 C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 1471, p. 587 (3d ed. 2010)).

However, leave to amend under Rule 15(a) is properly denied when the amendment would be futile. *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006). The assessment of futility is governed by the familiar plausibility standard that applies to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.* Under

3

that standard, the Court assumes the truth of all well-pleaded facts, gives the plaintiff the benefit of all reasonable inferences therefrom, and evaluates whether the allegations admit the "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1]

After a scheduling order issues, the liberal amendment standard of Rule 15(a) is displaced by the "more demanding 'good cause' standard" of Federal Rule of Civil Procedure 16(b). *Hewes v. Pangburn*, 162 F.4th 177, 201 (1st Cir. 2025).

### DISCUSSION

In this case, the Court extended the deadline for amendment of the pleadings to the date that Plaintiff moved for leave to file the amended complaint. As such, the Rule 15(a) standard governs Plaintiff's request to amend, rather than the more restrictive good cause standard of Rule 16(b).

Defendants first contend that Plaintiff waived the claims he seeks to assert in the amended complaint by failing to object to the recommended decision following preliminary review of the second amended complaint. Second, Defendants argue that leave to amend should be denied on futility grounds because the proposed amended complaint fails to state any plausible claims.

### A.    Waiver

Under the so-called "waiver rule," a party's "failure to object to an R&R waives the right to seek appellate review of the ruling adopting its proposed findings of fact and

---

[1] A complaint filed by a pro se litigant is "to be liberally construed" and held to a less stringent standard than a pleading drafted by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

4

conclusions of law." *Feliciano-Rodriguez v. United States*, 986 F.3d 30, 35 (1st Cir. 2021). In seeking to amend his pleading, Plaintiff is not requesting appellate review of the recommended decision, which evaluated the sufficiency of the second amended complaint. Instead, he seeks to amend his complaint to allege additional facts, and assert claims based on those facts. Waiver, therefore, does not apply.

**B.   Futility**

In the proposed amended complaint, Plaintiff asserts five claims, ostensibly under 42 U.S.C. § 1983. However, section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quotation marks omitted). To state an actionable claim under § 1983, a plaintiff must plead that certain conduct (a) was committed under color of state law and (b) denied plaintiff rights secured by the Constitution or other federal law. *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999). Plaintiff has alleged that Defendant Ball was, at all relevant times, a police officer employed by the Calais Police Department, acting in his official capacity. (Amended Complaint ¶ 10.) The plausibility assessment therefore turns on whether the facts alleged in the complaint give rise to a reasonable inference that Defendant Ball violated Plaintiff's constitutional (or other federal) rights.

**1.   Excessive Force**

In Count I, Plaintiff claims that Defendant Ball used excessive force during Plaintiff's arrests in March 2019 and May 2023. When evaluating an excessive force claim brought under § 1983, the inquiry begins with "identifying the specific constitutional right

5

allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "Where, as here, the excessive force claim arises in the context of an arrest . . . of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment[.]" *Id.* Such a claim is appropriately "analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Id.* at 388.

The test of reasonableness under the Fourth Amendment "is not capable of precise definition or mechanical application" but instead turns on the particular circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (quotation marks omitted). The reasonableness inquiry in an excessive force case "is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.*

The Court previously determined that Plaintiff alleged sufficient facts to support an excessive force claim against Defendant Ball based on the 2019 incident given Plaintiff's allegations that Defendant Ball "employed handcuffs in a way that injured Plaintiff, unnecessarily tased him, and 'hogtied' him for nine hours." (Recommended Decision at 3.) Although Plaintiff does not reiterate the exact allegations in the proposed amended

6

complaint, his allegations that he was "tased [and] dragged while intoxicated" are sufficient to support an excessive force claim in relation to the 2019 incident.[2]

With respect to the incident in May 2023, Plaintiff alleges that Defendant Ball "again used side-cuffing and excessively tight handcuffs" in a "torture style manner." (Amended Complaint ¶¶ 3-4, 42.)  Plaintiff's allegations can reasonably be characterized as conclusory assertions insufficient to state an actionable claim.  *See Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013) (complaint may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard").  The Federal Rules of Civil Procedure "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678.  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotation marks omitted).  The proposed amendment to allege an excessive force claim based on the May 2023 incident, therefore, would be futile.

### 2. False Arrest and Malicious Prosecution

In Count II, Plaintiff avers that Defendant Ball made knowingly false reports about him, including fabricated claims of resisting arrest, violent behavior, property damage, and self-inflicted injury, and that he was falsely charged with theft and property damage

---

[2]  Regardless of whether the allegations in the proposed amended complaint are insufficient to support an excessive force claim with respect to the 2019 incident, Plaintiff's excessive force claim should proceed based on the allegations in the second amended complaint (i.e., the current complaint).  That is, given that the Court previously determined that Plaintiff had alleged sufficient facts to support a claim and given Plaintiff's pro se status, it is reasonable for the Court to consider the allegations in the second amended complaint and in the proposed amended complaint as bases for Plaintiff's excessive force claim regarding the incident in 2019. *See Collymore v. McLaughlin*, No. 16-cv-10568-LTS, 2016 WL 6645764, at *1 n.1 (D. Mass. Nov. 7, 2016) (considering a pro se plaintiff's amended complaint as a supplement to the original complaint).

following the incident in 2019.  (Amended Complaint ¶¶ 35-36, 51-52.)  Regarding the 2023 incident, Plaintiff claims that Defendant Ball filed a baseless and retaliatory criminal trespass charge against him for being at his own home.  (*Id.* ¶¶ 45, 51.)  Plaintiff, however, does not tether the claims to a particular constitutional provision.  As with the excessive force claims, the first step in assessing the viability of these claims "is to identify the specific constitutional right allegedly infringed."  *Albright*, 510 U.S. at 271.

To the extent Plaintiff attempts to allege claims of false arrest, the claims are judged by reference to the protections of the Fourth Amendment.  *See Manuel v. City of Joliet, Ill.,* 580 U.S. 357, 367 (2017); *see also Pena-Borrero v. Estremeda*, 395 F.3d 7, 12 n.8 (1st Cir. 2004).  "The elements of a false arrest claim are that: '(1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the defendant had no privilege to cause the confinement.'"  *Mitchell v. City of Boston*, 130 F. Supp. 2d 201, 214 (D. Mass. 2001) (quoting *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 3 n.6 (1st Cir. 1995)).  To make out such a claim, Plaintiff "must show at a minimum that the arresting officer[] acted without probable cause."  *Mann v. Cannon*, 731 F.2d 54, 62 (1st Cir. 1984).

The allegations of fabricated evidence and false statements appear to sound in malicious prosecution, a claim governed by the Fourth Amendment's guarantee of freedom from seizure in the absence of probable cause.  *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 99-100 (1st Cir. 2013); *see also McDonough v. Smith*, 588 U.S. 109, 116 (2019) (indicating that malicious prosecution is the common-law tort most analogous to a fabricated evidence claim).  To state such a claim, Plaintiff must plausibly allege that Defendant Ball "(1)

8

caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Id.* at 101 (quotation marks omitted). As to "what a favorable termination entails," the Supreme Court determined that the element requires a showing only that the plaintiff's "prosecution ended without a conviction." *Thompson v. Clark*, 496 U.S. 36, 39 (2022).

By contrast, favorable termination is not an element of a false arrest claim, *Mitchell*, 130 F. Supp. 2d at 215, which generally "has a life independent of an ongoing trial or putative future conviction—it attacks the arrest only to the extent it was without legal process, even if legal process later commences[.]" *McDonough*, 588 U.S. at 122.[3] The principle established by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994), however, could bar a false arrest claim. In *Heck*, the Supreme Court held that a state prisoner could not maintain a claim under 42 U.S.C. § 1983 for damages where he alleged that his arrest, trial, and conviction were unconstitutional because an award of damages on such a claim would implicitly invalidate the prisoner's outstanding criminal conviction. 512 U.S. 477, 486-487 (1994). Because the plaintiff's § 1983 claim effectively challenged his conviction, the Supreme Court determined that the plaintiff must first obtain relief from the conviction through state or federal habeas proceedings, or similar proceedings, before seeking a remedy under § 1983. *Id.* at 487. In other words, under *Heck*, a plaintiff cannot in the first instance assert in this Court what would effectively be a collateral attack on a

---

[3] *See generally Wallace v. Kato*, 549 U.S. 384, 389-90 (2007) (summarizing the relationship between false arrest, which ends upon the institution of legal process, and malicious prosecution, which commences upon the institution of legal process).

criminal judgment. *Id.* at 484. A plaintiff must first obtain relief from the conviction through state or federal habeas proceedings, or similar proceedings, before seeking a remedy under § 1983. *Id.* at 487.

Under *Heck*, Plaintiff could not proceed on a false arrest claim if he "would have to negate an element of the offense for which he was arrested[.]" *Cabot v. Lewis*, 241 F. Supp. 3d 239, 255 (D. Mass. 2017). Whether *Heck* bars a false arrest claim turns on an "analysis of the relationship between [a] plaintiff's individual theories for relief and his criminal case[.]" *Id.*; *see also Thore v. Howe*, 466 F.3d 173, 179 (1st Cir. 2006) (providing that the "district court must consider the relationship between the § 1983 claim and the conviction, including asking whether the plaintiff could prevail only by negating an element of the offense of which he was convicted") (quotation marks and modifications omitted).

Here, Plaintiff alleges that he was charged with theft and "inflated property damage charges that were elevated in order to charge a felony" following the incident in 2019 and was charged with criminal trespass following the incident in 2023. (Amended Complaint ¶¶ 36, 45, 52.) Notably, Plaintiff has alleged no facts to suggest that matters for which he was arrested in 2019 and/or 2023 resolved in Plaintiff's favor. Accordingly, he has not stated a plausible claim for malicious prosecution. *See Doyle v. Rumsey*, No. 2:22-cv-00127-GZS, 2023 WL 2868315, at *4 (D. Me. April 10, 2023) (concluding that plaintiff failed to plead plausible malicious prosecution claims in the absence of any allegations regarding how proceedings against plaintiff terminated); *Johnson v. Town of Weare*, No. 12-cv-032-SM, 2012 WL 2450599, at *3 (D. N.H. June 4, 2012) (recommending dismissal

of malicious prosecution claim where complaint failed to provide any facts suggesting that legal proceedings against plaintiff terminated in his favor).

Plaintiff has similarly alleged no facts that would support a false arrest claim based on the 2023 incident.  His allegations are conclusory and provide no facts regarding the circumstances that gave rise to the criminal charges.  As to the 2019 incident, Plaintiff alleges he was arrested even though he did not pose a danger to anyone, did not threaten anyone, did not barricade the door to the bathroom at the store where he was arrested (implying that the State asserts that he did), and he did not exit the store with an allegedly stolen item.  Plaintiff's allegations, when viewed most favorably to Plaintiff, are sufficient to allege a claim that Plaintiff was arrested without probable cause.

While it is conceivable that Plaintiff's false arrest claim would require him to negate an element of an offense arising out of the 2019 incident, because the pleadings lack any reference to the status of the charges, the Court cannot determine that *Heck* bars the false arrest claim. Unlike malicious prosecution, the favorable disposition of the criminal charges is not an element of the false arrest claim.  Plaintiff, therefore, was not required to allege the disposition.  Because Plaintiff has alleged sufficient facts to support a false arrest claim, the proposed amendment to assert a false arrest claim based on the 2019 incident would not be futile.

### 3.    Illegal Search & Unlawful Blood Draw

In Count III of the amended complaint—captioned, illegal search, strip search, and photographing—Plaintiff claims that he was "partially undressed and photographed without consent while incapacitated." (Amended Complaint ¶ 54.)  Elsewhere, he asserts

11

that in connection with the 2019 arrest, he was "partially undressed and photographed to document [T]aser wounds" while in plain view of "onlookers who were recording the incident on cell phones." (*Id.* ¶ 32.)  In Count IV, Plaintiff claims that he "was subjected to a warrantless, nonconsensual blood draw while sedated." (*Id.* ¶ 56.)  Like Plaintiff's false arrest and malicious prosecution claims, these claims are appropriately analyzed under the Fourth Amendment's guarantee of the right to be free from "unreasonable searches and seizures."  U.S. Const. amend. IV.  *See Schmerber v. California*, 384 U.S. 757, 767 (1966) ("The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State.").

"The right to security in person . . . protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures.  A search comprises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property."  *Horton v. California*, 496 U.S. 128, 133 (1990).  Plaintiff's claim that he was partially undressed and photographed while incapacitated implicates the concept of unlawful search and seizure.  *See Brown v. Pepe*, 42 F. Supp. 3d 310, 315 (D. Mass. 2014) (analyzing constitutionality of so-called "perp walk" where plaintiff argued that his voice and likeness had been captured and memorialized against his will, while in custody, in violation of his right to privacy).  And a "blood draw is a search of the person," so the analysis ordinarily involves an evaluation of whether its administration without a warrant was reasonable.  *Mitchell v. Wisconsin*, 588 U.S. 840, 849 (2019); *see also Schmerber*, 384 U.S. at 768 (considering whether the police, in a driving under the influence case, were "justified in requiring petitioner to submit to the blood test, and whether the means and

12

procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness"). In general, the "reasonableness of a search . . . depends on 'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.'" *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 43 (1st Cir. 2009) (quoting *Bell v. Wolfish*, 551 U.S. 520, 559 (1979)).

Regardless of the reasonableness of the alleged photographing and blood draw, Plaintiff's proposed amendment fails because Plaintiff does not allege that Defendant Ball was personally involved in the photographing or the blood draw. Liability for damages under § 1983 "can only be imposed upon officials who were involved personally in the deprivation of constitutional rights." *Pinto v. Nettleship*, 737 F.2d 130, 132 (1st Cir. 1984); *accord Cosenza v. City of Worcester, Mass.*, 355 F. Supp. 3d 81, 90 (D. Mass. 2019) ("In a Section 1983 case, each Government official . . . is only liable for his or her own misconduct.") (quotation marks omitted).

Because Plaintiff alleges no facts that implicate Defendant Ball in the alleged unlawful search and seizure, an amendment to permit Plaintiff to prosecute the claims asserted in Counts III and IV would be futile. *See Gosselin v. Cunningham*, 915 F.2d 1557, 1990 WL 152358, at *2 (1st Cir. Sept. 19, 1990) (affirming dismissal of § 1983 complaint that failed to make any specific allegations against the only named defendant for failure to state a claim); *Nieves Cruz v. Puerto Rico*, 425 F. Supp. 2d 188, 193 (D. P.R. 2006) (dismissing § 1983 claims for failure to allege that named defendant personally committed the illegal acts charged and rejecting contention that further discovery might provide plaintiffs a more precise idea about how to proceed against the defendant).

### 4.   Duty to Intervene

In Count V of the amended complaint, Plaintiff alleges that "Defendant Ball failed to intervene or prevent the unconstitutional acts performed by officers and agents" during the 2019 and 2023 incidents.  (Amended Complaint ¶ 58.)  Plaintiff's allegation is properly analyzed under the Due Process Clause of the Fourteenth Amendment.  *See Martinez v. Colon*, 54 F.3d 980, 984 (1st Cir. 1995).

> [P]olice officers *sometimes* have an affirmative duty to intervene that is enforceable under the Due Process Clause.  For example, "[a]n officer who is present at the scene . . . and who fails to take reasonable steps to prevent the victim of another officer's use of excessive force can be held liable under § 1983 for his nonfeasance," provided that he had a "realistic opportunity" to prevent the other officer's actions.

*Id.* at 985 (quoting *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990)).

Cases in the First Circuit have "primarily, if not exclusively, concerned allegations of failure to intervene in the excessive force context."  *Cosenza*, 355 F. Supp. 3d at 100 (quotation marks omitted) (collecting cases).  The First Circuit, however, has not expressly limited failure to intervene claims to the excessive force context and has "described actionable failure to intervene claims in terms that could encompass a broad range of constitutional rights."  *Id.* (quotation marks omitted) (collecting cases).

Plaintiff has not identified which alleged constitutional violations Defendant Ball was duty-bound to attempt to prevent, who committed the alleged violations, or any other pertinent circumstances, including whether Defendant Ball was present and had a reasonable chance to intervene.  *See Deptula v. City of Worcester*, 613 F. Supp. 3d 507, 519 (D. Mass. 2020) (indicating that duty of intervention exists only when an officer has a

14

realistic opportunity to intervene); *see also Morris v. City of Worcester*, No. 14-40164-DHH, 2015 WL 13229182, at *3 (D. Mass. Oct. 23, 2015) ("In assessing the sufficiency of claims for failure to intervene, courts have not required more than an allegation of presence and an opportunity to intervene to survive a motion to dismiss."). As such, even when construed with the benefit of all reasonable inferences to Plaintiff, the amended complaint does not state a plausible failure to intervene claim.

## CONCLUSION

After consideration of the parties' motions and the record, for the reasons explained above, I recommend that the Court grant in part Plaintiff's motion for leave to file the amended complaint as it relates to Plaintiff's claims of excessive force and false arrest based on the 2019 incident. I further recommend that the Court otherwise deny the motion to amend.

Because I construe Defendants' motion to strike to ask the Court to strike the entire amended complaint, and because I have recommended that the Court permit the amendment as it relates to the 2019 excessive force and false arrest claims, I deny the motion to strike.

## NOTICE

Any objections to the order on Defendants' motion to strike shall be filed in accordance with Federal Rule of Civil Procedure 72.

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen

(14) days of being served with a copy thereof.  A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 17th day of April, 2026.

16